IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KELLY S., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN J. O'MALLEY, Commissioner of Social Security, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER <br><br><br> Case #4:24-cv-00030-PK <br><br> Magistrate Judge Paul Kohler |

This matter comes before the Court on Plaintiff Kelly S.'s appeal from the decision of the Social Security Administration denying her application for disability and disability insurance benefits. Having considered the arguments, the record, and the law, the Court will reverse and remand the administrative ruling.

I. STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether the findings are supported by substantial evidence and whether the correct legal standards were applied.[1] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[2] The ALJ is required to consider all of the evidence, although the ALJ is not required to discuss all of the evidence.[3] If supported by substantial evidence, the Commissioner's findings are conclusive and must be

---

[1] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[2] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[3] *Id.* at 1009–10.

1

affirmed.[4] The Court must evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[5] However, the reviewing court should not reweigh the evidence or substitute its judgment for that of the Commissioner.[6]

## II. BACKGROUND

A.  PROCEDURAL HISTORY

In May 2021, Plaintiff filed an application for disability and disability insurance benefits, alleging disability beginning on July 1, 2016.[7] Plaintiff's claim was denied initially and upon reconsideration.[8] Plaintiff then requested a hearing before an ALJ, which was held on November 3, 2022.[9] The ALJ issued a decision on December 28, 2022, finding that Plaintiff was not disabled.[10] The Appeals Council denied Plaintiff's request for review on November 11, 2023,[11] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[12]

On March 8, 2024, Plaintiff filed her Complaint in this case.[13] On that same day, both parties consented to a United States Magistrate Judge conducting all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the

---

[4] *Richardson*, 402 U.S. at 390.

[5] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[6] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[7] R. at 239–42.

[8] *Id.* at 113–32, 146–50.

[9] *Id.* at 78–112.

[10] *Id.* at 59–77.

[11] *Id.* at 12–18.

[12] 20 C.F.R. §§ 416.1481, 422.210(a).

[13] Docket No. 1.

Tenth Circuit.[14] The Commissioner filed an answer and the administrative record on March 29, 2024.[15]

Plaintiff filed her Opening Brief on April 26, 2024.[16] The Commissioner's Answer Brief was filed on June 27, 2024.[17] No Reply Brief was submitted.

B.    MEDICAL EVIDENCE

Plaintiff sought disability based on back, neck, shoulder, and hip injuries; arthritis of the back and neck; post-traumatic stress disorder ("PTSD") and depression; and scoliosis.[18] Plaintiff has been treated for depression and anxiety.[19] While her treatment providers noted improvement with medication,[20] Plaintiff testified that she had to discontinue her medication due to its side effects.[21]

Tim Kockler, Ph.D., conducted a neuropsychological evaluation of Plaintiff in November 2022.[22] Dr. Kockler administered a battery of tests.[23] Evaluation of these tests revealed a low average full scale IQ.[24] Dr. Kockler assessed that Plaintiff's "overall level of functional ability

---

[14] Docket No. 6.

[15] Docket No. 8.

[16] Docket No. 9.

[17] Docket No. 13.

[18] R. at 263. Because resolution of this case depends largely on Plaintiff's mental limitations, the Court will limit its discussion of the evidence to the records concerning those limitations.

[19] *Id.* at 391, 394, 397, 401, 417, 492, 524, 527, 532.

[20] R. at 391, 417.

[21] *Id.* at 99–100.

[22] *Id.* at 558–76.

[23] *Id.* at 559.

[24] *Id.* 565, 569.

for day to day tasks was in the below average range."[25] He also stated that Plaintiff's ability to "remember simple locations and work-like procedures is expected to be low average" and "[h]er ability to understand and remember very short and simple instructions fell in the low average range."[26] Plaintiff's ability to "maintain attention and concentration for extended periods (of about 15-30 minutes) is expected to be low average."[27] Dr. Kockler concluded that it was "likely that [Plaintiff's] ability to complete a work week without undue interruptions from psychologically based symptoms would be mildly to moderately impaired."[28] Dr. Kockler ultimately diagnosed major depressive disorder, generalized anxiety disorder, and PTSD.[29]

C.  THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of July 1, 2016.[30] At step two, the ALJ found that Plaintiff suffered from the following severe impairment: degenerative disc disease.[31] At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment.[32] The ALJ determined that Plaintiff had the residual functional

---

[25] *Id.* at 570.
[26] *Id.* at 570–71.
[27] *Id.* at 571.
[28] *Id.*
[29] *Id.*
[30] *Id.* at 65.
[31] *Id.* at 65–68.
[32] *Id.* at 68.

4

capacity ("RFC") to perform light work, with certain restrictions.[33] At step four, the ALJ determined that Plaintiff could perform her past relevant work and, therefore, she was not disabled.[34]

## III. DISCUSSION

Plaintiff raises three issues in her brief: (1) whether the ALJ erred in failing to adequately consider Plaintiff's mental limitations in determining her RFC; (2) whether the ALJ failed to properly evaluate the medical opinion evidence; and (3) whether the vocational expert's testimony was reliable.

Plaintiff first argues that the ALJ erred by failing to include any mental limitations in his RFC determination. At step two, the ALJ found that Plaintiff had mild limitations in two of the four mental functioning areas.[35] Specifically, the ALJ found mild limitations in concentrating, persisting, or maintaining pace, and mild limitations in adapting or managing oneself. The ALJ further found that the evidence did not indicate that Plaintiff's mental conditions presented more than a minimal limitation in the claimant's ability to do basic work activities and, therefore, were non-severe.[36]

The ALJ went on to state that his RFC determination "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis."[37] However, the RFC assessment included no discussion of Plaintiff's mental limitations and no functional limits

---

[33] *Id.* at 68–72.

[34] *Id.* at 72–73.

[35] *Id.* at 66.

[36] *Id.* at 67–68.

[37] *Id.* at 68.

5

related to Plaintiff's mental impairments were imposed.[38] This was insufficient. The Tenth Circuit has stated that "a conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five."[39] Instead, the ALJ must consider all impairments, including those considered non-severe.[40] The ALJ may not simply "rely on his finding of non-severity as a substitute for a proper RFC analysis"[41] because "the Commissioner's regulations demand a more thorough analysis."[42]

Here, the ALJ recognized the need to conduct "a more detailed assessment,"[43] but failed to do so. The ALJ's RFC analysis is devoid of any discussion of Plaintiff's asserted mental impairments and any limitations that may result from these impairments. The ALJ's RFC discussion is strictly limited to Plaintiff's physical limitations. This was error.[44]

---

[38] *Id.* at 68–72.

[39] *Wells v. Colvin*, 727 F.3d 1061, 1068–69 (10th Cir. 2013).

[40] *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); *see also* SSR 96–8p, 1996 WL 374184, at *4 (July 2, 1996) (noting that criteria used at steps two and three of the analysis to evaluate mental impairments are "not an RFC assessment," and that "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form].").

[41] *Wells*, 727 F.3d at 1065.

[42] *Id.* at 1071.

[43] R. at 68 ("The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment.").

[44] *See Alvey v. Colvin*, 536 F. App'x 792, 794 (10th Cir. 2013) ("[A]t step four the ALJ here, unlike the ALJ in *Wells*, did not engage in any analysis of mental functions and how they may be impacted (or not) by [the plaintiff's] medically determinable mental impairments. It appears, therefore, that the ALJ failed to employ the step-four analytical procedure prescribed by the regulations.").

The Commissioner responds by arguing that the ALJ's evaluation at step two was sufficient to satisfy his obligations in determining Plaintiff's RFC. But, as noted, this is not consistent with the regulations and Tenth Circuit precedent. While the ALJ was not obligated to include any mental limitations in Plaintiff's RFC, he was required to consider Plaintiff's mild mental impairments in assessing her RFC. This was not done, despite the ALJ acknowledging that he was having difficulty analyzing Plaintiff's mental health issues.[45]

The Commissioner points to generalized statements by the ALJ indicating that he had considered all of Plaintiff's symptoms, but this is insufficient. In *Alvey v. Colvin*, the Tenth Circuit addressed similar statements and found them lacking. There, as here, the ALJ stated that the RFC assessment "reflects the degree of limitation the undersigned has found,"[46] but did not engage in any analysis of how the plaintiff's mental functions might affect her RFC. The court concluded that "the ALJ failed to employ the step-four analytical procedure prescribed by the regulations."[47] In other cases, the Tenth Circuit has found the ALJ's step four discussion sufficient where there is at least some mention of the plaintiff's mental impairments.[48] That did

---

[45] R. at 110.

[46] *Alvey*, 536 F. App'x at 794; R. at 68.

[47] *Alvey*, 536 F. App'x at 794.

[48] *Wells*, 727 F.3d at 1069 (stating that a separate discussion of a plaintiff's mental impairments "when assessing her credibility as part of his RFC determination . . . might have satisfied the ALJ's obligation at step four"); *Suttles v. Colvin*, 543 F. App'x 824, 826 (10th Cir. 2013) (finding "that the ALJ conducted a mental RFC assessment separate from the non-severity determination made at step two" where "the ALJ discussed evidence relating to depression and then pointedly omitted any limitation associated with that mental impairment on the RFC"); *Terry M. v. Saul*, No. 2:19-cv-00902-DB-JCB, 2020 WL 6136172, at *5 (D. Utah Sept. 15, 2020) ("Similar to the ALJ in *Suttles*, the ALJ in this case: (1) recognized that a separate mental RFC assessment was required at step four; (2) discussed the medical opinion evidence related to Plaintiff's mental impairments; (3) specifically omitted any limitations concerning Plaintiff's mental limitations from the RFC and the hypotheticals posed to the VE; and (4) did not make

not happen here. Instead, the ALJ relied on his step two findings as a substitute for an RFC analysis, which requires remand.[49]

The Commissioner argues that even if the ALJ's RFC articulation was erroneous, any error is harmless.[50] The Court may hold an ALJ's error harmless "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."[51] "In conducting our review, we should, indeed must, exercise common sense."[52]

Here there is evidence from which a reasonable factfinder could conclude that Plaintiff's mental impairments might result in work-related limitations. While the evidence of mental limitations during the relevant period is limited, it was enough to convince the ALJ that Plaintiff had mild limitations in concentrating, persisting, or maintaining pace, and in adapting or managing oneself. Despite this, the ALJ found that Plaintiff could perform her past relevant work as an executive assistant/administrative clerk and a sales representative. These positions are

---

any statements indicating that he was using his step-two findings to substitute for an adequate RFC analysis.").

[49] *See Lori A. v. Kijakazi*, No. 1:21-cv-00101-JCB, 2022 WL 2953727, at *5 (D. Utah July 26, 2022) ("Here, . . . the ALJ failed to include any discussion of Plaintiff's mental impairments in the RFC assessment despite stating that he was going to engage in such analysis at the RFC stage. Consequently, this court lacks what the *Suttles* court had: some indication that the ALJ adequately considered mental impairments, albeit mild, at the RFC formulation stage.").

[50] *Alvey*, 536 F. App'x at 795 (concluding "that the ALJ's failure to conduct a more particularized assessment of mental functions at step four was harmless error" because "[t]here is no substantial evidence that would allow a reasonable administrative factfinder to include any mental limitations in [the plaintiff's] RFC.").

[51] *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

[52] *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

either skilled or semi-skilled.[53] Courts have recognized that the inclusion of even mild limitations in concentration, persistence, or pace may preclude the ability to perform skilled and semi-skilled work.[54] Similarly, the Administration's Program Operations Manual System ("POMS") recognizes that "[o]ften, there is an increasing requirement for understanding and memory and for concentration and persistence" with skilled and semi-skilled work.[55] Thus, even mild mental functioning limitations could preclude a claimant from skilled or semi-skilled work.

At the hearing before the ALJ, the ALJ asked the vocational expert about an individual being off-task 50% of a workday because of difficulties maintaining concentration or pace. The vocational expert testified that being off task this much would preclude all work.[56] While this hypothetical presented extreme limitations seemingly not present here, the vocational expert's

---

[53] DICOT 219.362–010, 1991 WL 671953; DICOT 254.357-014, 1991 WL 672384; SSR 00-04p, 2000 WL 1898704, at *3 (Dec. 4, 2000) ("The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT.").

[54] *See Castillo v. Kijakazi*, 599 F. Supp. 3d 483, 489 & n.7 (W.D. Tex. 2002) (noting that even mild limitations in concentration, persistence, and pace could prevent past relevant work that ranged from semi-skilled to skilled); *Simon-Leveque v. Colvin*, 229 F. Supp. 3d 778, 788 (N.D. Ill. 2017) (explaining that "even a mild limitation in concentration, persistence, or pace could have an impact on a person's ability to perform [a] skilled position"); *Alesia v. Astrue*, 789 F. Supp. 2d 921, 933–34 (N.D. Ill. 2011) (faulting the ALJ for not considering whether the plaintiff's mild limitations in activities of daily living, social functioning, and concentration, persistence or pace affected her ability to perform past skilled work); *President v. Berryhill*, No. 17 C 4910, 2018 WL 4282053, at *3 (N.D. Ill. Sept. 7, 2018) (finding that mild limitations in social functioning or in concentration, persistence, or pace could affect a claimant's ability to work a semi-skilled position); *Hovi v. Colvin*, No. 12-C-169, 2013 WL 3989232, at *16 (W.D. Wis. Aug. 2, 2013) (explaining that mild limitations in concentration, persistence, and pace may preclude semi-skilled or skilled work).

[55] POMS DI § 25020.010(B)(4)(B).

[56] R. at 104–05.

testimony suggests that Plaintiff's mild mental limitations could result in work-related restrictions. This is especially true where the ALJ found that she could engage in skilled and semi-skilled work. The ALJ failed to adequately assess whether Plaintiff's mental impairments might impede her ability to perform her past relevant work or whether some mental limitations were required in the RFC assessment. Without this, the Court cannot be confident that a reasonable fact finder would reach the same result. Therefore, remand is required to allow the ALJ the opportunity to conduct the necessary analysis in the first instance. Because the ALJ's decision must be remanded for further proceedings, the Court need not reach Plaintiff's remaining arguments.[57]

### IV. CONCLUSION

It is therefore

ORDERED that the ALJ's decision is REVERSED AND REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for the purposes of conducting additional proceedings as set forth herein.

DATED this 23rd day of July, 2024.

BY THE COURT:

PAUL KOHLER
United States Magistrate Judge

---

[57] *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) (stating that the court "will not reach the remaining issues raised by [the plaintiff] because they may be affected by the ALJ's treatment of this case on remand").